# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CP-00775-COA

**DAHNE JONES A/K/A DAHNE C. JONES A/K/A**  **APPELLANT**
**DAHNE CHRISTOPHER JONES**

**v.**

**STATE OF MISSISSIPPI**  **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/14/2017 |
| TRIAL JUDGE: | HON. KATHY KING JACKSON |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAHNE JONES (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JEFFREY A. KLINGFUSS |
| NATURE OF THE CASE: | CIVIL - POSTCONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 10/09/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., FAIR AND WILSON, JJ.**

**LEE, C.J., FOR THE COURT:**

¶1.     In this appeal, we must determine if Dahne Jones's postrelease supervision (PRS) was properly revoked.  Finding no error, we affirm.

## PROCEDURAL HISTORY

¶2.     In 2001, Jones pleaded guilty to robbery.  The Jackson County Circuit Court sentenced him to ten years in the custody of the Mississippi Department of Corrections (MDOC), with four years to serve and six years of PRS.  In July 2004, Jones was released on PRS.  In April 2005, a show-cause order was issued summoning Jones to appear in court regarding his failure to pay fines, court costs, and restitution as previously ordered.  Jones did not appear,

and a bench warrant was issued in May 2005 stating that Jones was in contempt of court.

¶3.     On August 15, 2005, an MDOC corrections officer submitted an affidavit detailing nine PRS violations committed by Jones, including two positive drug tests, failure to report, and failure to pay fines.  That same day, the trial court issued an arrest warrant for Jones based upon these violations.  Jones was not apprehended at that time for reasons unknown.

¶4.     Over the next two years, Jones committed several crimes in Alabama.  Ultimately, he was sentenced to a lengthy prison term for these crimes.  After being released on parole in Alabama on August 2, 2016, the MDOC brought Jones to Mississippi based upon the 2005 arrest warrant.

¶5.     Jones received a waiver of his right to a preliminary revocation hearing, but he refused to sign the waiver.  The waiver listed all nine of Jones's PRS violations.  Jones also received notice from the MDOC regarding a probation-revocation hearing scheduled for August 31, 2016.  Jones refused to sign that he received the letter.

¶6.     During the revocation hearing, two parole officers testified regarding Jones's PRS violations.  Based upon the evidence presented, the trial court revoked Jones's PRS and ordered him to serve the remainder of his sentence.

¶7.     Jones filed a motion for postconviction relief (PCR), which the trial court denied.  He now appeals, asserting the following issues that we have condensed for clarity: (1) the trial court did not have jurisdiction to revoke his PRS; (2) he did not receive notice of his PRS violations; (3) he was denied a preliminary revocation hearing; (4) his counsel was ineffective; and (5) the trial court failed to issue a written statement supporting the

2

revocation.

¶8.    Absent a finding that the "ruling was clearly erroneous," this Court will not reverse a trial court's denial of a PCR motion. *Jones v. State*, 994 So. 2d 829, 830 (¶4) (Miss. Ct. App. 2008) (citing *Kirksey v. State*, 728 So. 2d 565, 567 (¶8) (Miss. 1999)). "However, when issues of law are raised, the proper standard of review is de novo." *Steele v. State*, 991 So. 2d 176, 177 (¶3) (Miss. Ct. App. 2008) (citing *Brown v. State*, 731 So. 2d 595, 598 (¶6) (Miss. 1999)).

## DISCUSSION

### I.    Jurisdiction

¶9.    Jones contends that his sentence expired in August 2010; thus, the trial court did not have jurisdiction to revoke his PRS in 2016. "Probation may be lawfully revoked beyond the probationary period if a revocation petition is filed prior to the end of the probationary period—an act deemed to 'toll' the running of the probationary period—and the State acts on the petition within a reasonable time." *Leech v. State*, 994 So. 2d 850, 853 (¶14) (Miss. Ct. App. 2008). "If this were not the law, then a probationer who violates his probation on the last day of the five (5) year period would have to be caught and given a hearing that day or his probation could not be revoked. Such reasoning would be absurd and is not the law." *Jackson v. State*, 483 So. 2d 1353, 1356 (Miss. 1986). The petition to revoke Jones's PRS was filed on August 15, 2005, well within the PRS period. Therefore, we agree with the trial court that Jones's probationary period had been tolled. Although the time between the

3

expiration of Jones's sentence and his revocation was lengthy due to Jones's incarceration in Alabama, the State acted on the petition within a reasonable time upon Jones's release from custody in Alabama. *See Price v. State*, 132 So. 3d 1083, 1084 (¶6) (Miss. Ct. App. 2014). This issue is without merit.

## II. Notice

¶10. Jones claims he did not receive written notice of his PRS violations. However, during the revocation hearing, Jones admitted that he had received written notice of his PRS violations. Jones further admitted that he had read the notice, understood it, and discussed it with his attorney prior to the hearing. This issue is without merit.

## III. Preliminary Revocation Hearing

¶11. Jones argues that he was denied a preliminary revocation hearing. We first note that Jones failed to raise this issue at his revocation hearing; thus, the issue regarding a lack of a preliminary revocation hearing was waived. *See Friday v. State*, 141 So. 3d 18, 22 (¶13) (Miss. Ct. App. 2014). Notwithstanding the waiver, Jones's claim is without merit. Although Jones was entitled to a preliminary revocation hearing, he must show that prejudice resulted from the failure to hold a separate preliminary revocation hearing. *See id*. "If no prejudice is found and a formal [revocation] proceeding was held [that met minimum due-process requirements], then the failure to hold a preliminary hearing is harmless error." *Id*. The minimum due-process requirements for a probation-revocation hearing are:

> (1) written notice of the claimed violations of probation; (2) disclosure to the probationer of the evidence against him; (3) an opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses (unless the hearing officer finds

4

good cause for not allowing such confrontation); (5) a neutral and detached hearing body or officer; and (6) a written statement by the fact-finder as to the evidence relied on and reasons for revoking the probation.

*Loisel v. State*, 995 So. 2d 850, 852 (¶7) (Miss. Ct. App. 2008) (quoting *Payton v. State*, 845 So. 2d 713, 719 (¶22) (Miss. Ct. App. 2003)); *see also* Miss. Code Ann. § 47-7-34(2) (Rev. 2015) ("Procedures for termination of [PRS] . . . shall be conducted in the same manner as procedures for the revocation of probation and imposition of a suspended sentence . . . .").

¶12.    Here, we find any error was harmless. At his revocation hearing, Jones was afforded all due-process protections as required. He has failed to show any prejudice resulting from the lack of a preliminary revocation hearing. This issue is without merit.

### IV.    Ineffective Assistance of Counsel

¶13.    Jones argues that his counsel at his revocation hearing was ineffective for several reasons: she failed to challenge the timeliness of the revocation hearing; she failed to object to insufficient evidence of his PRS violations; and she forced Jones to attend the revocation hearing.[1]

¶14.    To prove ineffective assistance of counsel, Jones must show that: (1) his counsel's performance was deficient, and (2) this deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The burden of proof rests on [Jones] to show both prongs." *Willis v. State*, 66 So. 3d 740, 745 (¶21) (Miss. Ct. App. 2011). "Under *Strickland*, there is a strong presumption that counsel's performance falls within the range of reasonable

---

[1] Although Jones's argument is unclear, it appears he is claiming that he did not receive notice of the hearing and only attended based upon his attorney's insistence. However, as previously stated, Jones admittedly received notice of the revocation hearing.

5

professional assistance." *Id.* (citing *Strickland*, 466 U.S. at 689).

¶15.    The movant must allege facts pointing toward counsel's deficient performance with "specificity and detail." *Kinney v. State*, 737 So. 2d 1038, 1041 (¶8) (Miss. Ct. App. 1999). In PCR cases, "where a party offers only his affidavit, then his ineffective assistance of counsel claim is without merit." *Brooks v. State*, 89 So. 3d 626, 628 (¶6) (Miss. Ct. App. 2011) (quoting *Vielee v. State*, 653 So. 2d 920, 922 (Miss. 1995)).  The supreme court in *Walden v. State*, 201 So. 3d 1042, 1045 (¶14) (Miss. 2016), recently stated that "the petitioner's obligation to support his application with affidavits other than his own is not absolute.  That obligation may be excused by a showing that the petitioner has good cause for failing to obtain those affidavits." (Citing Miss. Code Ann. § 99-39-9(1)(e) (Rev. 2015)). Here, Jones has not shown good cause why he has not provided affidavits other than his own.

¶16.    Jones has offered only his own bare assertions, which are insufficient.  "It is firmly established that mere allegations are insufficient to entitle a defendant to an evidentiary hearing on a post-conviction claim of ineffective assistance of counsel." *Ealey v. State*, 967 So. 2d 685, 691 (¶18) (Miss. Ct. App. 2007).  Thus, Jones has not shown his attorney's performance was ineffective.  This issue is without merit.

### V.    Written Statement

¶17.    In his final issue, Jones argues that the trial court did not issue a written statement detailing the reasons his PRS was revoked.  However, the trial court entered an order of revocation that lists the PRS violations that the State proved Jones committed.  Additionally, the revocation hearing contains testimony from two parole officers detailing Jones's PRS

violations, including his two positive drug tests. This issue is without merit.

¶18. **AFFIRMED.**

**IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**