# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CP-01607-COA

JEREMY ALLEN A/K/A JEREMY LYNN ALLEN          APPELLANT

v.

STATE OF MISSISSIPPI          APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 10/07/2019 |
| TRIAL JUDGE: | HON. ANDREW K. HOWORTH |
| COURT FROM WHICH APPEALED: | UNION COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JEREMY ALLEN (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 01/05/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE CARLTON, P.J., LAWRENCE AND McCARTY, JJ.

### McCARTY, J., FOR THE COURT:

¶1. Following his arrest, a defendant waived his indictment and plead guilty to two counts of auto theft. A trial court sentenced him to two consecutive ten-year terms in custody, with a total of twelve years suspended and eight years to serve, followed by five years of post-release supervision (PRS).

¶2. The defendant was subsequently arrested for violating the terms of his probation. A revocation hearing was held on the matter, where the trial court found him guilty of violating his probation and sentenced him to serve the remaining twelve-year sentence. Likewise, the court revoked his PRS.

¶3. The defendant petitioned for post-conviction relief (PCR), arguing that his criminal

information was defective and that his revocation order failed to list reasons for his revocation. He also argued he was denied a preliminary hearing. The trial court denied his petition. Finding no error, we affirm.

**FACTS**

¶4. Jeremy Allen stole two cars in 2010. Following his arrest, he waived an indictment for two counts of auto theft and plead guilty to the charges. His criminal information charged him with "willfully, unlawfully, and feloniously, and without authority . . . tak[ing] away a motor vehicle" under Mississippi Code Annotated section 97-17-42(1) (Supp. 2007). It did not include language from the 2007 revised version of the statute, which specifies the length of time a defendant intended to possess the car.

¶5. The trial court sentenced Allen to a total of twenty years in custody on both counts combined. However, the court suspended twelve of those years and placed him on PRS so long as he complied with the conditions set out in the order, such as reporting to his probation officer, paying his supervision fees, abstaining from drug use, and "committing no offense against the laws of . . . any state."

¶6. As promised, Allen served his sentence and was released from prison to start his five-year journey under PRS.[1] But in 2016, the State petitioned to revoke both his suspended sentence and PRS. The petition alleged Allen violated multiple PRS terms by failing to report to his probation officer, testing positive for methamphetamine, and attempting to

---

[1] Allen was ordered to serve eight years of his sentence and would have been released in 2018, but it appears that he was released earlier because the record shows he violated the terms of his PRS as early as 2016.

escape the custody of a sheriff's department. It also claimed he owed an outstanding balance of over $200 in supervision fees. He had also been indicted on a fondling charge in 2015. Following this petition, Allen signed a form waiving his "rights and notice and/or waiting period prior to post-release revocation hearing."

¶7. Allen was subsequently given a revocation hearing on the charges. After reciting each claim listed in the petition, the trial court asked Allen if he understood the allegations against him. Allen responded that he did. The court then informed him that he had "the right to require the State to prove [he] violated [his] probation." The court further assured him that no "action" would be taken against him unless he either admitted to violating his probation or unless the State proved that he had. When asked, Allen elected not to question the State's witness.

¶8. During the hearing, Allen admitted he failed to report to his probation officer, owed over $200 in supervision fees, and tested positive for methamphetamine after using it. But he denied fondling a minor or attempting to escape the custody of a sheriff's department. Despite denying these allegations, Allen chose not to testify.

¶9. After hearing all the evidence, the trial court found that Allen violated the terms of his probation. The court accordingly revoked his PRS and restored his previously suspended twelve-year sentence. In Allen's presence, the court explained its decision was "based on [the] competent proof . . . in court and [based on] the admissions that [Allen] made as to some of [the] violations." However, the court did not include its specific reasons for revoking Allen's PRS when it later issued its final written order.

3

¶10. Allen filed a PCR petition. The trial court denied it, finding that after considering the relief requested, "it plainly appear[ed] from the face of the petitions, exhibits, and prior proceedings that [he] [was] not entitled to any relief on either the conviction claim or the revocation claim."

## STANDARD OF REVIEW

¶11. "Absent a finding that the 'ruling was clearly erroneous,' this Court will not reverse a trial court's denial of a PCR motion." *Jones v. State*, 270 So. 3d 1055, 1058 (¶8) (Miss. Ct. App. 2018). Issues of law, such as whether a criminal information is defective, will be reviewed de novo. *Moss v. State*, 45 So. 3d 305, 306 (¶4) (Miss. Ct. App. 2010).

## ANALYSIS

¶12. Allen asserts three assignments of error: (1) that his criminal information was defective, (2) that he was denied a preliminary hearing, and (3) that the order revoking his probation failed to list reasons for the revocation. Based on these arguments, Allen contends the trial court should have granted his PCR petition. We address each issue in turn.

### I. Allen's criminal information was not defective.

¶13. Allen argues his criminal information was defective because it excluded certain language that had been added to the auto theft statute. While Allen plead guilty to his charges, "[c]hallenges to the substantive sufficiency of an indictment may not be waived and consequently may be raised for the first time on appeal." *Vinzant v. State*, 99 So. 3d 767, 771 (¶12) (Miss. Ct. App. 2012). We therefore examine whether Allen's argument has merit.

¶14. Three years prior to Allen's arrest, our state's Legislature revised the auto theft statute

4

to add the phrases "of any value" and "with the intent to either permanently or temporarily convert [the car] or to permanently or temporarily deprive the owner of ownership." Miss. Code Ann. § 97-17-42(1). The relevant part of Allen's criminal information charged him with "willfully, unlawfully, and feloniously, and without authority . . . tak[ing] away a motor vehicle," but it did not include the additional phrases from the revised statute. As a result, Allen argues the omission of the "essential" elements render his criminal information defective.

¶15.    Less than ten years ago, we rejected this exact argument under parallel circumstances. *Spearman v. State*, 80 So. 3d 116, 121 (¶23) (Miss. Ct. App. 2011). Although the State included the "willfully, unlawfully, and feloniously" language in its indictment against the defendant, the State had omitted the revised statute's additional phrases. *Id.* at 119-20 (¶¶13-15). As a result, the defendant argued his indictment was "fatally defective." *Id*. at 118-19 (¶10).

¶16.    This Court rejected his argument by addressing the legislative intent behind the amended statute. *Id*. at 120 (¶¶18-19). Specifically, we emphasized that the purpose of adding the phrases was to simply "clarify" that short-term takings, like "joyrides," would also constitute a felony under the statute. *Id*. at 120 (¶19) (citing H.B. 857, Reg. Sess., 2007 Miss. Laws ch. 464, § 1). In other words, the Legislature did not intend to make the additional phrase a dispositive element of the crime. *Id*. For "the Legislature did not narrow the statute by creating additional required elements of proof. Rather, it broadened the application of section 97-17-42 by clarifying that any unauthorized possession or taking of another's

vehicle, no matter how brief, offends the felony auto-theft statute." *Id*. at 120-21 (¶19). This Court was ultimately "satisfied the indictment contained the essential elements of auto theft," which showed the defendant "(a) willfully and (b) without authority (c) took possession of or took away . . . (d) a motor vehicle of any value belonging to another." *Id*. at 121 (¶23).

¶17. In accordance with *Spearman*, we find the omission of the phrase "with the intent to either permanently or temporarily convert [the car] . . ." does not render Allen's criminal information defective. The information contained the essential elements of auto theft, citing that Allen "(a) willfully and (b) without authority (c) took possession of or took away . . . (d) a motor vehicle of any value belonging to another." *Id*. As a result, Allen was given adequate notice of the charges against him. This issue is without merit.

## II. The issue of whether Allen was denied a preliminary hearing is procedurally barred.

¶18. Allen next argues the trial court denied him a preliminary hearing. This issue is waived because he failed to raise it at his revocation hearing. *Jones v. State*, 270 So. 3d 1055, 1058-59 (¶11) (Miss. Ct. App. 2018) (Where the defendant failed to raise the issue at his revocation hearing, the Court found the defendant's complaint of being denied a preliminary hearing was procedurally barred from review).

¶19. Procedural bar aside, we went a step farther in *Jones* and held that even if a defendant was denied a preliminary hearing, he "must show that prejudice resulted from [this denial]." *Id*. For "[i]f no prejudice is found and a formal revocation proceeding was held that met minimum due-process requirements, then the failure to hold a preliminary hearing is harmless error." *Id*. This Court cited the minimum due process protections for probation revocation

6

hearings and found that the defendant in that case had been afforded all of the protections.[2]

*Id*. As a result, we found the *Jones* defendant was not prejudiced by a lack of a preliminary hearing. *Id*.

¶20. As will be examined below, we also find in this case that Allen was afforded a formal revocation proceeding that "met minimum due-process requirements." *Id*. Therefore, even if the trial court did deny him a preliminary hearing, he was not prejudiced, and any error would be harmless. This issue is without merit.

### III. The trial court did not violate Allen's due process rights.

¶21. Allen argues the trial court denied him due process because it failed to include in its final order a summary of reasons for his revocation.

¶22. "Under the minimum due process rights afforded a defendant in a parole revocation proceeding, he is entitled to a written statement by the fact finders as to the evidence relied on and reasons for revoking." *Grayson v. State*, 648 So. 2d 1129, 1134 (Miss. 1994) (citation and internal quotation marks omitted). Yet "a court's failure to make written findings for

---

[2] The minimum due process protections for probation revocation hearings are as follows:

> (1) written notice of the claimed violations of probation; (2) disclosure to the probationer of the evidence against him; (3) an opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses (unless the hearing officer finds good cause for not allowing such confrontation); (5) a neutral and detached hearing body or officer; and (6) a written statement by the fact-finder as to the evidence relied on and reasons for revoking the probation.

*Jones*, 270 So. 3d at 1059 (¶11) (citing *Loisel v. State*, 995 So. 2d 850, 852 (¶7) (Miss. Ct. App. 2008)).

revoking probation does not deny a probationer due process where the court's oral opinion is contained in the record and indicates the evidence relied upon, as well as the reasons for revocation." *Williams v. State*, 248 So. 3d 910, 914 (¶14) (Miss. Ct. App. 2018) (quoting *Grayson*, 648 So. 2d at 1134).

¶23.    In *Williams*, the defendant claimed his due process rights were violated because in his revocation order, "there was no written statement citing the evidence the court relied on" and no written "reason[s] for the revocation." *Id*. at 914 (¶11).    But the transcript of the defendant's hearing reflected that the lower court "thoroughly considered the evidence presented." *Id*.    Also, this Court recognized the defendant admitted to using drugs and made other admissions consistent with the allegations against him.  *Id*.    As a result, we found no merit to the defendant's claim that he was denied due process.  *Id*. at 915 (¶16).

¶24.    Based on *Williams*, we find Allen was also afforded adequate procedural protections because of his thorough revocation hearing.  The transcript clearly shows that during the hearing, the trial court recited each allegation against him and asked him if he understood them.  Allen replied that he did.  The court granted him permission to confront the State's witness and further challenge the charges against him.  Allen elected not to do so.  Instead, he admitted to failing to report to his probation officer, failing to pay his supervision fees, and using and testing positive for methamphetamine.  Although he denied fondling a minor and claimed he did not attempt to escape the custody of a sheriff's department, he was indicted on the fondling charge and had an affidavit issued against him on the escape charge.[3]

---

[3] We note that "the mere arrest of a probationer is not a violation of probation." *Williams v. State*, 298 So. 3d 416, 418 (¶12) (Miss. Ct. App. 2020) (quoting *Elkins v. State*,

¶25. Finally, the trial court explicitly ruled in Allen's presence that it was revoking his probation "based on competent proof . . . in court and [based on] the admissions that [Allen] made as to some of [the] violations." We are therefore unpersuaded by Allen's claim that he "had no idea" why his probation was revoked. Because he was afforded adequate procedural protections during his revocation hearing and was fully informed of the charges against him, we find the trial court did not deny Allen due process by omitting reasons for his revocation in its final order.

## CONCLUSION

¶26. Allen's criminal information was not defective because it contained all elements necessary to notify him of the charges against him. Further, the issue of whether he was denied a preliminary hearing is waived because he failed to address the issue at his revocation hearing. And even if he was denied a preliminary hearing, it was harmless error. Finally, the trial court did not deny Allen due process, although it omitted reasons for his revocation from his final order, because he was afforded sufficient procedural protections at his revocation hearing. As a result, the trial court did not err in denying Allen's PCR petition. We affirm the trial court's judgment.

¶27. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD AND LAWRENCE, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**

---

116 So. 3d 185, 188 (¶12) (Miss. Ct. App. 2013)). But Allen's arrests, along with his other violations, i.e., his failure to report to his supervisor, combine to warrant his probation revocation.

9