# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00988-COA

**MELODY ANN ROBERTS A/K/A MELADY ANN ROBERTS**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 08/19/2024 |
| TRIAL JUDGE: | HON. JAMES McCLURE III |
| COURT FROM WHICH APPEALED: | TATE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JACOB WAYNE HOWARD |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: KATY TAYLOR SARVER |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | REVERSED, VACATED, AND REMANDED - 11/04/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., McDONALD AND LASSITTER ST. PÉ, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1. Melody Ann Roberts appeals from the Tate County Circuit Court's denial of her motion for post-conviction relief (PCR). After pleading guilty to the sale of alprazolam, the circuit court sentenced Roberts to a suspended fifteen-year sentence and placed her on post-release supervision (PRS) in a drug court program. While on PRS, Roberts failed two urinalysis tests and failed to appear in drug court. Following a single revocation hearing, the circuit court revoked her PRS and imposed the original fifteen-year sentence. Roberts then filed a PCR motion, arguing that her sentence was unlawfully imposed according to Mississippi Code Annotated section 47-7-37(5)(a) (Rev. 2015). The circuit court denied the

motion, and Roberts appealed. Having considered the record and relevant precedent, we reverse the circuit court's judgment and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2. On April 3, 2018, Roberts pled guilty to the sale of 20 to 40 dosage units of alprazolam, in violation of Mississippi Code Annotated section 41-29-139 (Rev. 2014). The circuit court sentenced Roberts to fifteen years in the custody of the Mississippi Department of Corrections (MDOC), with all fifteen years suspended, and imposed a fifteen-year term of post-release supervision (PRS) under Mississippi Code Annotated section 47-7-34.[1] The

---

[1] Mississippi Code Annotated Section 47-7-34 (Rev. 2015) provides:

(1) When a court imposes a sentence upon a conviction for any felony committed after June 30, 1995, the court, in addition to any other punishment imposed if the other punishment includes a term of incarceration in a state or local correctional facility, may impose a term of post-release supervision. However, the total number of years of incarceration plus the total number of years of post-release supervision shall not exceed the maximum sentence authorized to be imposed by law for the felony committed. The defendant shall be placed under post-release supervision upon release from the term of incarceration. The period of supervision shall be established by the court.

(2) The period of post-release supervision shall be conducted in the same manner as a like period of supervised probation, including a requirement that the defendant shall abide by any terms and conditions as the court may establish. Failure to successfully abide by the terms and conditions shall be grounds to terminate the period of post-release supervision and to recommit the defendant to the correctional facility from which he was previously released. Procedures for termination and recommitment shall be conducted in the same manner as procedures for the revocation of probation and imposition of a suspended sentence as required pursuant to Section 47-7-37.

(3) Post-release supervision programs shall be operated through the probation and parole unit of the Division of Community Corrections of the department. The maximum amount of time that the Mississippi Department of Corrections may supervise an offender on the post-release supervision program is five (5) years.

court specified that Roberts was being placed under nonreporting PRS, so Roberts would be overseen by the drug court. In addition, the circuit court gave Roberts credit for one day served in custody and ordered her to pay court and restitution costs.

¶3. The sentencing order required Roberts to complete the drug court program and to comply with numerous other directives, including regularly reporting to the judge, abstaining from the use of alcohol and drugs, submitting to substance abuse testing, and abiding by the participant handbook. The circuit court further ordered:

> [I]f the Defendant fails to successfully abide by all the terms and conditions of this sentence then upon five (5) days notice to the Defendant by the District Attorney or Probation Officer of a claimed violation, the Court will conduct a hearing. If the claimed violation is proven, the Court will have authority to terminate the period of post release supervision and to incarcerate the Defendant for up to the full amount of the sentence. *Procedures for termination and incarceration shall be conducted in the same manner as procedures for revocation of probation and imposition of a suspended sentence.*

(Emphasis added).

*Drug Court Contract*

¶4. On the same day Roberts pleaded guilty, she signed a drug court contract. As a condition of this contract, Roberts was to comply with several directives, including submitting to the supervision of the Drug Court, abstaining from the use of alcohol and drugs—including over-the-counter medications prohibited by the court—submitting to urinalysis tests, attending all treatment meetings, court dates, and not violating any laws. Roberts signed the contract, acknowledging the requirements and that she understood that violating the contract may subject her to certain graduated sanctions, possible removal from

the program, and subsequent incarceration. In paragraph ten, she agreed:

> I understand that upon acceptance into the Drug Court program I may be *subject to certain graduated sanctions* for violation of the Drug Court rules as contained in the Drug Court Handbook, including but not limited to time in the county jail. I understand that by entering into the Drug Court program that I am waiving certain constitutionally guaranteed rights to which I might otherwise be entitled. I will receive a verbal notice of any such violation allegation by the Drug Court staff and the Drug Court Judge will conduct a hearing concerning the allegation at the next available Drug Court day. . . . I do hereby waive any further notice of hearing, right to counsel and notice of violation.

(Emphasis added). Further, the contract stated that Roberts was waiving certain unspecified constitutionally guaranteed rights.

*Intervention Court Agreement*

¶5. In 2019, the Legislature amended our drug court statutes, Mississippi Code Annotated sections 9-23-5 to -51 (Rev. 2019), to include it with other court programs, such as a mental health court, veterans court, and others, collectively known as "intervention courts." As a result, drug court participants thereafter signed "intervention court agreements." Roberts signed her drug court contract on April 3, 2018, prior to the 2019 amendments and creation of intervention courts. Although the State argues that Roberts signed away her rights to the graduated sanctions of section 47-7-37(5)(a), Roberts never signed the "Intervention Court Agreement," nor does the record show that Roberts was ever requested to sign it.[2] According

---

[2] Mississippi's statutory drug court provisions, originally passed as Senate Bill 2605, went into effect on July 1, 2003. 2003 Miss. Laws ch. 515, § 1 (S.B. 2605). It was amended effective July 1, 2019, with a name change to "Alyce Griffin Clark Intervention Court." 2019 Miss. Laws. ch. 466, § 2 (H.B. 1352). The statute also gave the Administrative Office of Courts oversight of the intervention courts. Miss. Code Ann. § 9-23-7. Mississippi Code Annotated section 9-23-5(c) defines intervention courts:

to the State's argument, this new agreement included a provision that participants consented to participate in an alternative sentencing program that was outside the confines of section 47-7-37(5)(a).

*Drug Court Operation*

¶6. Roberts participated in a program that had five phases, including vocational, educational, and spiritual components, as well as substance abuse treatment.[3] Participants met weekly (or as otherwise instructed), were tested for drugs, and were required to graduate from high school or obtain a GED. They were required to appear in court weekly until they obtained their GED or diploma.

*Drug Court Handbook*

¶7. Participants were also required to follow the rules contained in the "Drug Court Handbook" or face sanctions or termination from the program. The handbook provided participants with guidelines concerning substances to avoid. One of the drugs participants

---

Intervention courts means a drug court, mental health court, veterans court or problem-solving court that utilizes an immediate and highly structured intervention proces for eligible defendants or juveniles that brings together mental health professionals, substance abuse professionals, local social programs and intensive judicial monitoring.

[3] Drug court was divided into five phases, with the final three phases requiring participants to obtain a GED and pay all court costs, fines, restitution, and treatment in full. In phase three, participants working towards a GED are required to pass *at least* three of the five tests, unless the intervention court judge states otherwise. Participants must also have eighteen consecutive months of clean urinalysis. In phase four, participants who have not obtained a GED continue weekly attendance. Additionally, participants must have twenty-seven consecutive months of clean urinalysis results. Finally, phase five is a transitional and aftercare phase.

were advised not to use or possess was kratom.[4]

*Roberts's First Set of Violations and Sanctions*

¶8. On January 29, 2019, Roberts tested positive for kratom during a urinalysis test. The intervention court judge sanctioned her with seven days of incarceration. On September 1, 2019, Roberts failed another urinalysis test for kratom and was sanctioned with fourteen days of incarceration. On October 28, 2019, when Roberts again tested positive for kratom, she was sanctioned with twenty-eight days of incarceration. Finally, on April 28, 2020, Roberts tested positive for buprenorphine and was sanctioned with six weeks of incarceration.[5]

*Post-Release Supervision and Drug Court (now Intervention Court) Progression*

¶9. On April 5, 2021, Roberts paid Tate County $2,590.80 in full satisfaction of her court-ordered fines, fulfilling a requirement for advancement in the program. In 2023, she advanced to phase four of the program. During phase four, participants were required to obtain their GED; however, Roberts was unable to complete this requirement because of challenges related to her dyslexia, difficulty with comprehension, and impaired hearing.

*The State's Petition to Revoke Post-Release Supervision*

¶10. On December 7, 2023, the State filed its first petition with the circuit court to revoke Roberts's PRS because of her failure to complete the drug court's GED requirement. The State sought an order revoking the PRS and sentencing Roberts to serve her original

---

[4] Kratom: The 40 compounds in M. Specosia leaves, including many alkaloids, such as but not limited to, 7-hydroxymitragynine, and Mitragynine.

[5] Buprenorphine is a synthetic opioid used to treat pain and opioid use disorder.

suspended sentence.  This petition was never set for a hearing; thus, the court did not take any action on it.

*Roberts's Subsequent Violations and the State's Amended Petition to Revoke Post-Release Supervision*

¶11.    On February 22 and 27, 2024, Roberts tested positive for kratom.  Two days later, on February 29, 2024, Roberts failed to appear in drug court.  On March 1, 2024, the State filed an amended petition to revoke Roberts's PRS and listed the recent positive drug tests and failure to appear as the basis for the amended petition.

*The Revocation Hearing and Order*

¶12.    On April 4, 2024, the circuit court held a revocation hearing.  Roberts appeared and was represented by counsel.  During the hearing, Roberts stated that she understood that she was before the court for failing two drug tests for kratom and failing to appear at drug court. Roberts stated that she ingested the kratom through an energy shot and that she was unaware the drink contained kratom until she failed the drug test.  Otherwise, Roberts stated she has been clean and sober since 2020.  Next, Roberts informed the court that she was diagnosed with a mental illness and requested mental health treatment.  In addition, Roberts disclosed that she had been a drug court participant for approximately six and a half years because of her inability to obtain a GED because of her dyslexia, difficulty with comprehension, and impaired hearing.

¶13.    At the conclusion of the hearing, the court determined that Roberts had violated the terms and conditions of her PRS and issued an order revoking her PRS.  The circuit court sentenced Roberts to serve the suspended term of fifteen years in the custody of the MDOC,

7

receiving credit for seven days served while awaiting a hearing.

*Roberts's Motion for Post-Conviction Relief*

¶14.    On May 14, 2024, Roberts filed a PCR motion contending that the court's order revoking her PRS and imposing her original sentence was illegal.  Roberts contended that she committed mere technical violations of her PRS when she failed two drug tests and failed to appear at intervention court.[6]  More importantly, she argued, this petition was the State's first one for revocation for one or more technical violations, and the maximum penalty authorized by section 47-7-37(5)(a)[7] is a period of imprisonment not exceeding ninety days.[8]

_____

[6]    According to Mississippi Code Annotated section 47-7-2(q) (Rev. 2023), a technical violation is defined as "an act or omission by the probationer that violates a condition or conditions of probation placed on the probationer by the court or the probation officer."

[7]  This section provides:

The probation and parole officer after making an arrest shall present to the detaining authorities a similar statement of the circumstances of violation. The probation and parole officer shall at once notify the court of the arrest and detention of the probationer and shall submit a report in writing showing in what manner the probationer has violated the conditions of probation. Within twenty-one (21) days of arrest and detention by warrant as herein provided, the court shall cause the probationer to be brought before it and may continue or revoke all or any part of the probation or the suspension of sentence. If the court revokes probation for one or more technical violations, the court shall impose a period of imprisonment to be served in either a technical violation center or a restitution center not to exceed ninety (90) days for the first revocation and not to exceed one hundred twenty (120) days for the second revocation. For the third revocation, the court may impose a period of imprisonment to be served in either a technical violation center or a restitution center for up to one hundred eighty (180) days or the court may impose the remainder of the suspended portion of the sentence. For the fourth and any subsequent revocation, the court may impose up to the remainder of the suspended portion of the sentence. The period of imprisonment in a technical violation center imposed under this section shall not be reduced in any

8

Roberts further contended that while the Legislature has excepted some violations of PRS from the graduated penalty scheme—i.e., a felony or when a defendant absconds—her violations were not within that exception.[9]

*The State's Response to the PCR Motion*

¶15. On May 16, 2024, the court ordered the State to file a response to Roberts's PCR motion and permitted Roberts to file a reply when the State responded.

¶16. On June 11, 2024, the State filed its response, contending that Roberts knowingly consented to participate in an alternative sentencing program that was outside the confines of section 47-7-37(5)(a) when she signed the drug court contract, which "was ultimately amended into the Intervention Court Agreement" in 2019, and when she received an Intervention Court Participation Handbook (i.e., Drug Court Handbook).[10] The State relied

---

manner.

Miss. Code Ann.§ 47-7-37(5)(a) (Rev. 2018).

[8] We acknowledge Roberts's letter filed advising this Court of the relevance of our recent opinion in *Harper v. State*, No. 2024-CA-01111-COA, 2025 WL 2961882 (Miss. Ct. App. Oct. 21, 2025), which has not yet mandated.

[9] Mississippi Code Annotated section 47-7-37.1 (Rev. 2023) contains that exception:

Notwithstanding any other provision of law to the contrary, if a court finds by a preponderance of the evidence, that a probationer or a person under post-release supervision has committed a felony or absconded, the court may revoke his probation and impose any or all of the sentence. For purposes of this section, "absconding from supervision" means the failure of a probationer to report to his supervising officer for six (6) or more consecutive months.

[10] We assume the State incorrectly cited section 47-7-35(5)(a); the correct citation is section 47-7-37(5)(a).

on the language in paragraph 11 of the Intervention Court Agreement and paragraph 10 of the drug court contract, which stated that she was "waiving certain constitutionally guaranteed rights."

¶17. In the alternative, the State argued that Roberts had previously been sanctioned for PRS violations in 2019 and 2020 (*see supra* ¶12). As a result, the State argued that if the court determined Roberts's violations were subject to section 47-7-37(5)(a), then the February 2024 violations made a fourth or subsequent violation, authorizing the court to impose Roberts's original suspended sentence.

*Roberts's Reply to the State's Response*

¶18. On June 13, 2024, Roberts replied to the State's response. First, Roberts argued that the State was incorrect in contending she knowingly consented to participate in a sentencing scheme outside the confines of section 47-7-37(5)(a). Although she signed a drug court contract that stated she was waiving certain constitutional rights, neither that contract nor the Intervention Court Agreement—which she did not sign—included any language indicating a waiver of her statutory rights under section 47-7-37(5)(a) to the application of graduated penalties. Moreover, Roberts argued that it was not permissible for a criminal defendant to agree by contract to receive a term of imprisonment greater than what the Legislature authorizes. In support, she cited *Atwood v. State*, 183 So. 3d 843 (Miss. 2016).[11]

¶19. Next, Roberts contended that the State was incorrect in equating "sanctions" with

---

[11] Despite the dissent's statement that our case on appeal follows the precedent established in *King v. State*, 405 So. 3d 1263 (Miss. Ct. App. 2025), we, in fact, follow the precedent first established in 2016 in *Atwood*.

10

"revocations," pointing out that both Mississippi law and the Drug Court Handbook made it clear that a sanction is not equivalent to a revocation. Under section 47-7-37, the Legislature clearly stated that the term of imprisonment for PRS violations is based on the number of prior *revocations*—not prior sanctions. The Intervention Court Handbook also stated that the drug court could impose graduated "sanctions" for violations, but when revoking probation or PRS, the district attorney is required to prepare and file a petition for the termination of intervention court proceedings or *a petition for revocation of probation*, further distinguishing between a sanction and revocation.

¶20. Lastly, Roberts contended that even if the meaning of "revocation" in section 47-7-37 was ambiguous, the longstanding rule of leniency requires a penal statute be interpreted strictly against the State and construed liberally in the accused's favor under *McLamb v. State*, 456 So. 2d 743, 745 (Miss. 1984).

*Order on Roberts's PCR Motion*

¶21. On August 19, 2024, the court issued an order denying Roberts's PCR motion. The court held that as an intervention court participant, Roberts was required to abide by all the terms and conditions of the program. The court held that since Roberts was found in violation of the April 3, 2018 sentencing order's terms, the court reserved the right to sentence her to the maximum term of fifteen years' incarceration. The court listed the five occasions from April 10, 2018, to April 28, 2020, when Roberts failed to abide by all the terms and conditions.

¶22. In addition to the five prior violations, the court cited three additional violations by

11

Roberts in February 2024—specifically, two failed drug tests and a failure to appear in intervention court, which Roberts admitted. Finally, the court considered that Roberts had been a program participant for approximately six years. As a result, the court stated that Roberts's history reflected a pattern of noncompliance, and given the court's leniency, Roberts's revocation of her PRS was justified.

¶23. Before concluding, the court discussed the PRS statutory graduated-penalty scheme. The court acknowledged that section 47-7-37 turns on the number of times a defendant's PRS has been revoked for one or more technical violations. Nonetheless, the court held that the sentencing scheme does not apply in this case because the original sentencing order stated that the court could impose the full sentence if the violation was proven. As a result, the court denied the motion, concluding that it was without merit and should be dismissed according to Mississippi Code Annotated section 99-39-11(2).[12]

*Appeal*

¶24. Roberts appealed the circuit court's denial of her PCR motion and contends that section 47-7-37(5)(a) governs. Further, Roberts argues that she did not waive section 47-7-37(5)(a)'s graduated penalties for PRS revocations by signing the drug court contract.

¶25. In response, the State contends that the graduated penalty scheme does not apply to

---

[12] This statute provides in part:

(2) If it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief, the judge may make an order for its dismissal and cause the petitioner to be notified.

Miss. Code Ann. § 99-39-11(2) (Rev. 2020).

drug court violations and that the circuit court had the authority to impose Roberts's fifteen-year sentence. Additionally, the State argues that Roberts's sentence was a suspended sentence governed by Mississippi Code Annotated section 99-19-29, despite the order calling it "post-release supervision."[13] Therefore, the court could revoke Roberts's PRS upon finding of a single violation. The State also contends that in the alternative, if the graduated penalty scheme did apply, Roberts's previous sanctions in drug court were the equivalent of revocations—and these revocations were a fourth or subsequent revocation, further justifying the imposition of her sentence. Moreover, the State argues that Roberts waived certain constitutional rights when she signed the drug court contract, including the graduated penalties provisions of section 47-7-37(5)(a).

## STANDARD OF REVIEW

¶26.    "When reviewing a circuit court's denial or dismissal of a PCR motion, we will reverse the judgment of the circuit court only if its factual findings are 'clearly erroneous';

---

[13] This section states:

Whenever any court granting a suspended sentence, or the governor granting a pardon, based on conditions which the offender has violated or failed to observe, shall be convinced by proper showing, of such violation of sentence or pardon, then the governor or the judge of the court granting such suspension of sentence shall be authorized to annul and vacate such suspended sentence or conditional pardon in vacation or court time. The convicted offender shall thereafter be subject to arrest and court sentence service, as if no suspended sentence or conditional pardon had been granted, and shall be required to serve the full term of the original sentence that has not been served. The offender shall be subject, after such action by the court or the governor, to arrest and return to proper authorities as in the case with ordinary escaped prisoner.

Miss. Code Ann. § 99-19-29 (Rev. 2020).

13

however, we review the circuit court's legal conclusions under a de novo standard of review." *Berry v. State*, 230 So. 3d 360, 362 (¶3) (Miss. Ct. App. 2017) (quoting *Boyd v. State*, 65 So. 3d 358, 360 (¶10) (Miss. Ct. App. 2011)). Questions of statutory interpretation likewise receive de novo review. *Atwood*, 183 So. 3d at 845 (¶5) (quoting *Tipton v. State*, 150 So. 3d 82, 84 (Miss. 2014)).

## DISCUSSION

### I.     Whether section 47-7-37(5)(a) applies to Roberts's revocation.

¶27.   Mississippi law requires that post-release supervision be treated the same as probation. Mississippi Code Annotated section 47-7-34(2) provides the following:[14]

> The period of post-release supervision shall be conducted in the same manner as a like period of supervised probation, including a requirement that the defendant shall abide by any terms and conditions as the court may establish. Failure to successfully abide by the terms and conditions shall be grounds to terminate the period of post-release supervision and to recommit the defendant to the correctional facility from which he was previously released. *Procedures for termination and recommitment shall be conducted in the same manner as procedures for the revocation of probation and imposition of a suspended sentence as required pursuant to Section 47-7-37*.

(Emphasis added). The Mississippi Supreme Court has recognized that the Legislature has provided guidance on the revocation and recommitment procedures in section 47-7-34 and section 47-7-37. *Atwood*, 183 So. 3d at 845 (¶7). In order to revoke PRS, section 47-7-34 directs the application of the procedural framework of section 47-7-37(5)(a):

> If the court revokes probation for one or more technical violations, the court shall impose a period of imprisonment to be served in either a technical

---

[14]   Roberts's original sentencing order placed her on fifteen years of post-release supervision, *pursuant to the provisions of section 47-7-34* of the *Mississippi Code Annotated.*

14

> violation center or a restitution center *not to exceed ninety (90) days for the first revocation* and not to exceed one hundred twenty (120) days for the second revocation. For the third revocation, the court may impose a period of imprisonment to be served in either a technical violation center or a restitution center for up to one hundred eighty (180) days or the court may impose the remainder of the suspended portion of the sentence.

Miss. Code Ann. § 47-7-37(5)(a) (emphasis added). It follows, then, that revocations of PRS must be handled in the same manner as probation revocations. *Id.* at 845 (¶7).

¶28.   In *Atwood*, 183 So. 3d at 847 (¶12), the Mississippi Supreme Court held that section 47-7-37(5)(a) directly governs petitions to revoke PRS. In that case, the defendant pled guilty to grand larceny and was sentenced to a ten-year term in custody. *Id.* at 844 (¶2). The circuit court suspended nine years and eleven months, giving Atwood one month to serve and five years of PRS. *Id.* After being expelled from a restitution center, the field officer petitioned the court to revoke Atwood's PRS. *Id.* at (¶3). The circuit court held that Atwood had violated a condition of his release by failing to complete the restitution center program and was expelled for good cause. *Id.* Thus, the court revoked his supervised release and imposed the remainder of his ten-year sentence. *Id.* The circuit court found the Legislature's 2014 amendments to section 47-7-37 unconstitutional in that they "purport[ed] to restrict the inherent power of the court to enforce *its own orders* in violation of the separation-of-powers doctrine." *Id.* (emphasis added). Atwood petitioned for post-conviction relief, contending that the reimposition of his suspended sentence was illegal because it exceeded the maximum period of imprisonment authorized by section 47-7-37. *Id.* at (¶4). But the circuit court denied his PCR motion, maintaining that the amendments were unconstitutional and violated the separation of powers doctrine. *Id.* Alternatively, the court also found that section 99-19-

15

29 governed and independently authorized the court to revoke Atwood's PRS and reinstate the remainder of his original sentence. *Id.*

¶29. On appeal, the Mississippi Supreme Court began by noting that the PRS program under section 47-7-34 was created by the Legislature. *Id.* at (¶9). Reasoning that only the Legislature possesses the power to take away by statute what has been given by statute, the Court held that the amendments were constitutional and did not violate the separation-of-powers doctrine. *Id.* at (¶10). Further, the Court found that Atwood was, in fact, sentenced to PRS and that since the State sought to revoke his PRS, its revocation was governed by section 47-7-37. *Id.* at (¶12). Moreover, the Court held that the circuit court erred by relying on Atwood's sentencing order and section 99-19-29 instead of the graduated-sanctions framework in section 47-7-37. *Id.* at (¶¶10, 12). "[D]efining crimes and prescribing punishments are exclusively legislative functions as a matter of constitutional law." *Id.* at 846 (¶9). Thus, the Mississippi Supreme Court made it clear that the procedure for revoking PRS was governed exclusively by section 47-7-37. *Id.* at 847 (¶12). "Circuit courts do not have inherent power to suspend a sentence or to impose a term of post-release supervision, nor do they have inherent power to revoke a term of post-release supervision and impose a period of imprisonment." *Id.* at 846 (¶9).

¶30. We reiterated this holding in *White v. State*, 311 So. 3d 1278, 1282 (¶10) (Miss. Ct. App. 2021). In *White*, the defendant pleaded guilty to possession of less than ten grams of methamphetamine with intent to sell. *Id.* at 1279 (¶2). The circuit court sentenced him to sixty-seven days of incarceration, seven years of PRS, with five years reporting and two years

nonreporting. *Id*. In January 2018, White's probation officer filed a petition to revoke his PRS because White failed to report for intake. *Id*. at (¶3). During a September 2018 hearing, the court found that White had violated the terms of his PRS and ordered that White complete a drug rehabilitation program while incarcerated at a technical violation center. *Id*. at 1280 (¶4). In February 2019, White was released from the technical violation center. *Id*. (¶5). In March 2019, White's probation officer filed a second petition to revoke his PRS for failing to report upon being released. *Id*. at (¶6). Thinking this was White's third revocation petition, the circuit court revoked White's PRS and imposed a five-year term of incarceration. *Id*. White filed a PCR motion challenging the revocation, and the circuit court denied the motion without a hearing. *Id*. at 1281 (¶¶7-8). In explaining its denial, the circuit court relied on Mississippi Code Annotated section 47-7-37.1 (Rev. 2015), which provides that if a probationer commits a felony or absconds, his probation may be revoked. *Id.* at 1281-82 (¶8). On appeal, we reversed, noting the changes in section 47-7-37:

> If the court revokes probation for one or more technical violations, the court shall impose a period of imprisonment to be served in either a [TVC] or a restitution center not to exceed ninety (90) days for the first revocation and not to exceed one hundred twenty (120) days for the second revocation. *For the third revocation, the court may impose a period of imprisonment to be served in either a [TVC] or a restitution center for up to one hundred eighty (180) days or the court may impose the remainder of the suspended portion of the sentence.*

*Id*. at 1282 (¶10). We held that "a court may impose the offender's full remaining suspended sentence for a 'third revocation.'" *Id*. Thus, we held that the circuit erred in revoking White's PRS on only the second revocation hearing. *Id*. at (¶13).

¶31.    Recently, we held a circuit court in error when it imposed a defendant's original

17

sentence on only his second revocation petition. *King v. State*, 405 So. 3d 1263, 1273 (¶27) (Miss. Ct. App. 2025). There, King was sentenced to a forty-five-year term, all forty-five years were suspended, and King was placed on a term of five years' probation reporting to the drug court. *Id*. at 1266 (¶4). Following King's repeated violations of drug court rules, the court revoked his probation and imposed his original forty-five-year sentence after only two petitions for revocation. *Id*. at 1267 (¶10). On appeal from the order denying PCR, we held that King's probation was governed by section 47-7-37 and that King's probation could be revoked only upon his third petition for revocation. *Id*. at 1272 (¶26). We also stated that the 2014 amendments to section 47-7-37 clarify that it is not the number of individual technical violations that determines the penalty, but, rather, the number of times a petition for revocation is filed. *Id*.

¶32.    In the case at hand, just as in *Atwood*, Roberts was sentenced to serve a fifteen-year term of imprisonment, all fifteen years were suspended, and she was placed on post-release supervision. In the sentencing order, the sentencing court correctly acknowledged that PRS was authorized by section 47-7-34:

> IT IS FURTHER ORDERED. . . [T]he said Defendant be and is hereby placed under a term of <u>fifteen (15)</u> years of *post release supervision*, *pursuant to the provisions of Section 47-7-34, M.C.A*. This shall be non-reporting Post Release Supervision due to the fact that said Defendant will be reporting to Drug Court.
> As a further requirement of the Defendant's *Post Release Supervision*, he/she shall participate in the Drug Court Program.

(Emphasis added). Both *Atwood* and *King* make it absolutely clear that the sentencing language stating that a defendant is being placed on PRS is the controlling factor for

revocation. Thus, in this case, according to Roberts's sentencing order, any revocation of Roberts's PRS was governed by section 47-7-37(5)(a), and her full sentence could only be imposed after a third petition for revocation had been filed.

¶33. Roberts's sentence was not solely a suspended sentence controlled by Mississippi Code Annotated section 99-19-29, as the State argues. Instead, the sentencing court both suspended Roberts's sentence *and* imposed PRS. In *Atwood*, the State made a similar argument, claiming that section 99-19-29 provided the circuit court with the authority to revoke Atwood's PRS and reinstate the remainder of his original sentence. However, on appeal, the Mississippi Supreme Court found that Atwood was both sentenced to PRS and received a suspended sentence and that any revocation of his PRS was governed by section 47-7-37. *Atwood*, 183 So. 3d at 847 (¶12).

¶34. We conclude here that the circuit court lacked the authority to revoke Roberts's PRS after one revocation based solely on language in the sentencing order claiming to permit it. This argument was specifically rejected in *Atwood*. The Court held that the amendments to section 47-7-37 did not violate the separation-of-powers doctrine. *Id*. at 846 (¶¶8, 10). Nothing in the amendments impinged upon a trial court's ability to enforce its orders. *Id*. at (¶8). The circuit court still retained its authority to determine whether Atwood had violated a condition of his PRS, as well as the power to revoke his term of supervision and to impose a period of imprisonment. *Id*. The Legislature simply altered the term and place of imprisonment for certain violations. *Id*. "Defining crimes and prescribing punishments are exclusively legislative functions as a matter of constitutional law." *Atwood*, 183 So. 3d at

19

(¶9).

¶35.    *Atwood*, *White*, and *King* support our holding that any revocation of Roberts's PRS was governed by section 47-7-37(5)(a), which requires that three petitions for revocation be filed before the imposition of the original sentence. The statute expressly states that *it is the number of revocations filed* – not the number of individual technical violations – that governs whether the original sentence may be imposed. *King*, 405 So. 3d at 1272 (¶26). Because Roberts's post-release supervision had been revoked only once, the circuit court was not authorized to impose Roberts's full sentence. The dissent challenges our reliance on *Atwood*, *White*, and *King*. But the dissent ignores what Roberts's sentence actually was—**fifteen years of post-release supervision**. *Atwood*, *White*, and *King* are relevant because these cases correctly interpret section 47-7-37 for PRS revocation—the very issue presented here—nothing more, nothing less.

¶36.    Further, the dissent's analysis is flawed for several additional reasons. First, the record reflects that the circuit court placed Roberts on **<u>fifteen years of post-release supervision</u>**, and her participation in drug court was a condition of that PRS. Second, the legislative intent is clear that the updated definition of "technical violation" set forth in section 47-7-2 does not apply to the circumstances presented here. Third, even if the legislative intent were less than clear, the updated definition cannot apply to Roberts's case because the amendment does not apply retroactively.

¶37.    First, the dissent has overlooked Roberts's sentencing order that expressly imposed a fifteen-year sentence of PRS. It was not simply an independent drug court placement. The

order clearly states: "[T]he said Defendant be and is hereby placed under a term of **fifteen (15) years of** *post release supervision*, pursuant to the provisions of Section 47-7-34, M.C.A. *This shall be non-reporting Post Release Supervision* due to the fact that said Defendant will be reporting to Drug Court." (Emphasis added). From the plain language of the order, it is clear that *the judge's original intent* was to place Roberts in drug court as a condition of PRS rather than as an alternative sentence under Title 9 of the Mississippi Code Annotated.[15]

¶38. Moreover, section 47-7-34, which is cited in the sentencing order, directs any termination procedures for PRS to follow section 47-7-37. Section 47-7-37(5)(d) sets forth the graduated-penalty framework for PRS violations, expressly stating the requirement that "three revocations" occur before the court can impose the remainder of a sentence. Thus, Roberts's PRS revocation was properly subject to the statutory graduated-penalties process governing PRS violations. Accordingly, it is the statutory framework **for PRS** within 47-7-37 that governs the court's reimposition of Roberts's sentence, not drug court rules.

¶39. The sentencing judge has discretion to impose PRS conditions, as found in Mississippi

---

[15] In addition, according to her sentencing order, Roberts was placed on fifteen years of post-release supervision. To help resolve her drug addiction, the court placed her in drug court as one condition of her PRS. But the sentencing order listed numerous other conditions of Roberts's PRS, including (but not limited to) paying fees, having no firearms, not visiting gambling establishments, and not associating with people who have bad reputations. Drug court participants usually complete the program in five years. This meant, under Roberts's sentencing order, that even if she completed drug court, she was still subject to an additional ten years of PRS. Should she violate any of the other conditions, she could still face petitions to revoke the PRS, which the court would handle pursuant to section 47-7-37.

Code Annotated section 47-7-35.[16] The dissent points out that the statute does not expressly

include drug court completion as an approved condition. This is a narrow reading of the

statute, which expressly states that the terms and conditions "***may include** among them **the***

***following or any other**.*" Miss. Code Ann. § 47-7-35(1). In this case, the court placed

Roberts on PRS with her reporting to drug court as the "any other" condition. Imposing drug

court as a condition of Roberts's PRS required the judge to wear two hats: one that reflects

the drug court's rehabilitative model, and one that reflects the court's adjudicative role in the

underlying circuit court case. When wearing the latter hat, the court must follow the statutory

---

[16] Mississippi Code Annotated section 47-7-35(1) provides:

(1) The courts referred to in Section 47-7-33 or 47-7-34 shall determine the terms and conditions of probation or post-release supervision and may alter or modify, at any time during the period of probation or post-release supervision, the conditions and may include among them the following or any other:
That the offender shall:
    (a) Commit no offense against the laws of this or any other state of the United States, or of any federal, territorial or tribal jurisdiction of the United States;
    (b) Avoid injurious or vicious habits;
    (c) Avoid persons or places of disreputable or harmful character;
    (d) Report to the probation and parole officer as directed;
    (e) Permit the probation and parole officer to visit him at home or elsewhere;
    (f) Work faithfully at suitable employment so far as possible;
    (g) Remain within a specified area;
    (h) Pay his fine in one (1) or several sums;
    (i) Support his dependents;
    (j) Submit, as provided in Section 47-5-601, to any type of breath, saliva or urine chemical analysis test, the purpose of which is to detect the possible presence of alcohol or a substance prohibited or controlled by any law of the State of Mississippi or the United States;
    (k) Register as a sex offender if so required under Title 45, Chapter 33.

procedure for proper revocation of PRS found in section 47-7-37.

¶40.	Second, the dissent contends that the recently updated definition of technical violations excludes drug court participants from the application of section 47-7-37's graduated-penalties framework.  This interpretation is incorrect.  During the 2025 legislative session, the Mississippi Legislature amended the definition of "technical violation."  The statute now provides:

> "Technical violation" means an act or omission by the probationer that violates a condition or conditions of probation placed on the probationer by the court or the probation officer, but shall not include a plea or sentence in an intervention court provided under Chapter 23, 25 or 27 of Title 9, Mississippi Code of 1972.

Miss. Code Ann. § 47-7-2(q) (Supp. 2025) (added text underlined). The Mississippi Legislature writes our state laws, and for us to properly interpret changes, we seek to discern the legislative intent.  In this case we need not solely rely on the language of the amendment. The transcript from the legislative session when this change was discussed provides the best explanation of the Legislature's intent:

> What we've run into some of *our judges and prosecutors want to plead someone into an intervention court* and they are not pleading them because they are afraid the act of that final resolution of their case sends them back before the parole board. All we're saying is that if you have already been arrested the parole board has had an opportunity to address that arrest.  That at some point down the road *if you are accepted into an intervention court your plea into that court would not be a technical violation*. That is an explanation of the language of the change.

Miss. S.B. 2359 Floor Debate, Reg. Sess. (Feb. 6, 2025), at 02:05 (statement of Senator Daniel H. Sparks), https://law-db.mc.edu/legislature/bill_details.php?id=14366&session =2025 (emphasis added).

¶41.    This legislative history shows that this amendment was not designed to exclude PRS participants supervised by drug court from the protections of section 47-7-37's graduated-penalty framework.  Rather, judges and prosecutors were hesitant to refer individuals into drug court because of concern over that "pleading" counting as a "technical violation."  The Legislature's amendment resolved that concern and clarified that such a plea into an intervention court would not count as a technical violation, leading to a revocation.

¶42.    For example, consider a defendant who is on PRS (but not in drug court) and violates a condition, is arrested, and faces a revocation petition.  This defendant may benefit from drug court, and the circuit court may indicate a willingness to refer him to drug court.  But the defendant is hesitant to plead guilty to the charges and go to drug court because the plea would be considered a "technical violation" that would count against him in the future under section 47-7-37.  By excluding pleas or sentences that result in a defendant being sent to drug court based on the definition of a "technical violation," the Legislature was trying to eliminate the dilemma our hypothetical defendant faces.  He could plead guilty, be placed in drug court, and not have this plea counted as a technical violation in the future.

¶43.    Our Legislature also acknowledged a public policy reason behind the change in the statute, as illustrated by the floor discussion:

> Our intervention courts are one of the best things going in the correctional system because these individuals are generally working, they are being much more supervised than what we just talked about with probation and parole in our judges in our intervention courts. . . . They are paying fees and fines in the millions of dollars, and they are not being paid to be housed by the department of corrections in the state of Mississippi.[17]

---

[17]  It should be noted that Roberts has substantially met the goals of the intervention

24

Miss. S.B. 2359 Floor Debate, Reg. Sess. (Feb. 6, 2025), at 01:42 (statement of Senator Daniel H. Sparks), https://law-db.mc.edu/legislature/bill_details.php?id=14366&session= 2025. This interpretation of the amended definition of technical violations does not treat drug court participants differently from other persons on PRS, as the dissent writes. While those on probation or PRS who are not yet in drug court get a "pass" (i.e., if they plead into drug court, it will not count as a technical violation), when PRS participants enter drug court as a condition of PRS, they remain under the same statutory framework as any other PRS supervisee. Participation in drug court does not remove them from the graduated sanctions outlined in section 47-7-37. Accordingly, before a sentence may be reimposed, the district attorney must file three formal petitions to revoke PRS, triggering the court's authority under that statute.

¶44. Third, this amended definition in section 47-7-2(9) would not apply to Roberts because the amendment does not apply retroactively. The amendment was enacted on February 6, 2025, and became effective on July 1, 2025. *Id.* However, Roberts's indictment, the commission of her crime, and the imposition of her sentence all occurred prior to the amendment taking effect. Mississippi law is clear that statutory amendments apply prospectively unless the Legislature expressly states otherwise. *Lewis v. State*, 291 So. 3d 398, 399-400 (¶6) (Miss. Ct. App. 2020). This is also codified in Mississippi Code Annotated section 99-19-1 (Rev. 2020), which provides that if a crime is committed before

court, as intended by the Legislature.

the enactment of a statutory change, the penalty in effect at the time of the crime applies.[18] Accordingly, because Roberts's case was final before the effective date of the amendment, the new definition of "technical violation" does not apply, and the dissent's reliance on it is misplaced.

¶45.    In a final approach that would likewise deprive Roberts of her right to expect graduated penalties under section 47-7-37, the dissent reasons that those rights are afforded only to persons under probations that are supervised by MDOC.  In support, the dissent points to language in section 47-7-33(1) that states probationers are supervised by the MDOC.  Because drug courts are not supervised by MDOC, the dissent states, the revocation procedure in section 47-7-37 does not apply.  However, the dissent's reasoning fails first, as noted above, because it ignores the unmistakably clear language of Roberts's sentencing order, where the court states numerous times that it was placing her on *post-release supervision* with her reporting to drug court.  There was no need for MDOC supervision in such a case, and it is undisputed that Roberts was placed on PRS.

---

[18]    This section provides:

No statutory change of any law affecting a crime or its punishment or the collection of a penalty shall affect or defeat the prosecution of any crime committed prior to its enactment, or the collection of any penalty, whether such prosecution be instituted before or after such enactment; and all laws defining a crime or prescribing its punishment, or for the imposition of penalties, shall be continued in operation for the purpose of providing punishment for crimes committed under them, and for collection of such penalties, notwithstanding amendatory or repealing statutes, unless otherwise specially provided in such statutes.

Miss. Code Ann. § 99-19-1.

¶46. We are not mandating, as the dissent seems to think, that any specific procedure be followed in drug court. This case is not about drug court rules and procedures. It is about procedures to be followed by circuit courts when they decide petitions for revocation of PRS and are contemplating the imposition of the suspended portion of a defendant's original sentence. When a defendant is on PRS, whether supervised by MDOC or the drug court or anyone else for that matter, and a petition to revoke that defendant's PRS altogether has been filed, that petition must be considered by the sentencing court (i.e. the circuit court in its adjudicative role), which must follow the statutory requirements for the revocation of probation/PRS found in section 47-7-37. *Even the dissent recognizes that the drug court does not have the authority to revoke probation or parole; it may only sanction participants.* Accordingly, when Roberts entered drug court as a condition of her PRS sentence, the graduated-penalty framework under section 47-7-37 was required.

**II.     Whether Roberts waived her claim regarding the graduated penalties provisions of section 47-7-37(5)(a) when she signed the drug court contract.**

¶47. The State contends that even if section 47-7-37(5)(a) applied to drug court violations, when Roberts agreed to participate in drug court, she waived certain constitutionally guaranteed rights and agreed to verbal notice of any violation. The State quotes from the drug court contract:

> 10.     I understand that by entering into the Drug Court Program that *I am waiving certain constitutionally guaranteed rights* to which I might otherwise be entitled. I will receive a *verbal notice of any such violation* allegation by the Drug Court staff and the Drug Court Judge will conduct a hearing concerning the allegation at the next available Drug Court day. . . . *I do hereby waive any further notice of hearing, right to counsel and notice of violation.*

27

(Emphasis added).

¶48.    The Mississippi Supreme Court has defined waiver as an "intentional relinquishment or abandonment of a known right or privilege." *Wilson v. State*, 81 So. 3d 1067, 1087 (¶30) (Miss. 2012) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938)). "Waivers of constitutional rights *not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.*" *Id.* (quoting *Brady v. United States,* 397 U.S. 742, 748 (1970)). A waiver is considered voluntary if it is the result of a "free and deliberate choice rather than intimidation, coercion or deception." *Chim v. State*, 972 So. 2d 601, 603 (¶8) (Miss. 2008) (quoting *Coverson v. State*, 617 So. 2d 642, 647 (Miss. 1993)). "[A] waiver is knowing and intelligent if it is made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* The Mississippi Supreme Court has advised that "[c]ourts should indulge every reasonable presumption against waiver of fundamental constitutional rights and should not presume acquiescence in the loss of fundamental rights." *Wilson*, 81 So. 3d at 1087 (¶30).

¶49.    Neither the drug court contract, the participant handbook, nor the Intervention Court Agreement identified any rights that Roberts was waiving. Notably, none of these documents expressly referenced a waiver of the graduated-sanctions framework set forth in section 47-7-37(5)(a). Nor did any clearly identify which, if any, constitutional rights were being waived. As previously stated in *Brady*, a valid waiver must be a knowing and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences. *Brady*, 397 U.S.

28

at 748. The lack of specificity in these materials undermines any contention that Roberts intentionally relinquished her rights. In addition, Roberts never signed the Intervention Court Agreement. Moreover, the State failed to support its argument with relevant legal authority, leaving its waiver claim unsupported. Accordingly, we do not find that Roberts waived any statutory rights by signing the drug court contract.

¶50. The State also argues it was sufficient that Roberts was afforded the minimum due-process protections in her drug-court sanctions hearings. The State cites *Jones v. State*, 270 So. 3d 1055, 1059 (¶¶2-3) (Miss. Ct. App. 2018), in which this Court listed these rights, including written notice of charges, disclosure of the evidence against the defendant, the opportunity to be heard and confront witnesses, a neutral hearing body, and written findings by the fact-finder. The State contends that Roberts was given several hearings in drug court about her violations, which she attended, and was given the opportunity to be heard. However, meeting the minimum due process requirements for the *drug court sanctions hearings* is not the same as adhering to section 47-7-37(5)(a) for the *revocation of probation or PRS*. The statute clearly requires three **revocation hearings** to provide due process before a court can impose the original sentence. While *Jones* does set out the due process requirements of **a single** PRS revocation hearing, Roberts was entitled to **three** PRS revocation hearings under section 47-7-37(5)(a) before the court was authorized to impose her original fifteen-year sentence.[19] Thus, we find no merit to the State's due process

---

[19] We note that the court imposed the balance of Jones's original sentence after a single revocation hearing because Jones fell into the exception to section 47-7-37(5)(a) found in section 47-7-37.1, which excepts from the graduated-penalty framework PRS defendants who commit felonies or abscond. *Jones*, 270 So. 3d at 1057 (¶4). In Jones's

argument.

## CONCLUSION

¶51.	Based on the governing procedures under section 47-7-37, because only one petition for revocation of Roberts's PRS had been filed, the circuit court did not have the authority to impose her full sentence. Therefore, the circuit court erroneously denied Roberts's PCR motion. Accordingly, we reverse the circuit court's order denying Roberts's PCR motion, vacate the order revoking Roberts's PRS, and remand to the circuit court with instructions to reinstate Roberts's PRS.

¶52.	**REVERSED, VACATED, AND REMANDED.**

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, McCARTY AND LASSITTER ST. PÉ, JJ., CONCUR. EMFINGER, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., WEDDLE AND LASSITTER ST. PÉ, JJ.; LAWRENCE AND McCARTY, JJ., JOIN IN PART. WILSON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. LAWRENCE, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY EMFINGER AND WEDDLE, JJ.**

**EMFINGER, J., SPECIALLY CONCURRING:**

¶53.	I am bound to apply the existing precedent of *King v. State*,[20] as noted by the majority opinion. Therefore, I must concur that the circuit court cannot fully revoke Roberts' sentence

---

case, when a bench warrant was issued for his violations of post-release supervision, Jones fled the state and was returned years later after committing several crimes in Alabama and serving time in custody there. *Jones*, 270 So. 3d at 1059 (¶¶2-3). Under section 47-7-37.1, because Jones had absconded, he was not entitled to more than one PRS revocation hearing. In the instant case, Roberts neither committed a felony nor absconded, making the section 47-7-37.1 exception inapplicable.

[20] *King v. State*, 405 So. 3d 1263 (Miss. Ct. App. 2025).

*solely* for failing to successfully complete the drug court program.[21] However, I write separately to point out why this result is not wise or equitable in this case and other cases.

¶54.   On April 3, 2018, Roberts was sentenced to serve a term of fifteen years in the custody of the Mississippi Department of Corrections (MDOC) for her conviction of the sale of 20 to 40 dosage units of alprazolam. The sentence was suspended, and Roberts was placed on post-release supervision. A condition of her suspended sentence was that she successfully complete the Drug Court Intervention Treatment Program. A portion of her sentencing order, which she signed, stated:

> **IT IS FURTHER ORDERED** that if the Defendant fails to successfully abide by all the terms and conditions of this sentence then upon five (5) days notice to the Defendant by the District Attorney or Probation Officer of a claimed violation, the Court will conduct a hearing. If the claimed violation is proven, **the Court will have authority to terminate the period of post release supervision and to incarcerate the Defendant for up to the full amount of the sentence**. Procedures for termination and incarceration shall be conducted in the same manner as procedures for revocation of probation and imposition of a suspended sentence.

(Emphasis added). She also signed a "Drug Court Contract" on April 3, 2018, a portion of which provided:

> I likewise understand that I may be removed from the program for any serious infraction, including but not limited to failure to report to drug court without just cause, submission of fake urine or false documentation, and commission of a new crime. **Likewise, any conduct which evidences an abandonment of program objectives may result in expulsion from the program.**

(Emphasis added).

¶55.   Since her entry into drug court in April 2018, Roberts has violated the terms and

---

[21] As noted by the majority opinion, drug courts are now also known also intervention courts.

31

conditions of her participation in drug court at least seven times and has been "sanctioned" by incarceration at least four times. The district attorney's office filed an amended petition to revoke Roberts' post-release supervision as a result of Roberts' violation of the terms and conditions by testing positive for kratom on February 22, 2024, and February 27, 2024, and for failing to appear in drug court on February 29, 2024. She appeared before the circuit court on April 4, 2024, with counsel, and during her revocation hearing, she admitted these violations. As a result, the circuit court revoked her post-release supervision and ordered that she serve her fifteen-year sentence in MDOC's custody. In this appeal, Roberts challenges the circuit court's authority to fully revoke her sentence under these circumstances.

¶56.    Prior to the amendment of Mississippi Code Annotated section 47-7-2 in 2014, a circuit court had the discretion to either fully or partially revoke a sentence where a defendant violated *any* of the terms of probation or post-release supervision. *See* 2014 Miss. Laws ch. 457, § 47 (H.B. 585). In *Lott v. State*, 115 So. 3d 903, 907-08 (¶13) (Miss. Ct. App. 2013), this Court explained:

> Post-release supervision is an alternative to probation for convicted felons. *Ivory v. State*, 999 So. 2d 420, 427 (¶17) (Miss. Ct. App. 2008) (citing *Carter v. State*, 754 So. 2d 1207, 1208 (¶4) (Miss. 2000)). A court may impose a term of post-release supervision to follow a term of incarceration, provided the two terms do not exceed the maximum sentence for the crime. Miss. Code Ann. § 47-7-34(1) (Rev. 2011). "The period of post-release supervision shall be conducted in the same manner as a like period of supervised probation, including a requirement that the defendant shall abide by any terms and conditions as the court may establish." Miss. Code Ann. § 47-7-34(2). "At any time during the period of probation the court . . . **may issue a warrant for violating any of the conditions of probation or suspension of sentence** and cause the probationer to be arrested." Miss. Code Ann. § 47-7-37 (Rev. 2011). After the probationer is arrested,

> the court . . . shall cause the probationer to be brought before it and may . . . **revoke all or any part of the probation or the suspension of sentence, and may cause the sentence imposed to be executed or may impose any part of the sentence which might have been imposed at the time of conviction**.

*Id*.

(Emphasis added). A revocation could be based upon the failure to successfully complete the drug court program if such completion had been made a condition of probation or post-release supervision.

¶57. In 2014, with the enactment of House Bill 585, the Legislature created "technical violations." In what became section 47-7-2(q), the Legislature provided:

> "Technical violation" means an act or omission by the probationer that violates a condition or conditions of probation placed on the probationer by the court or the probation officer.

As a result, for some period of time thereafter, arguably all probation violations were "technical violations" and were subject only to the graduated sanctions, which were also created by House Bill 585. To a large extent, this took away the discretion from a circuit judge for how to deal with probation violations. In an apparent effort to limit the breadth of the above definition, in 2015 the Legislature enacted what became Mississippi Code Annotated section 47-7-37.1 (Rev. 2023) and provided:

> Notwithstanding any other provision of law to the contrary, if a court finds by a preponderance of the evidence, that a probationer or a person under post-release supervision has committed a felony or absconded, the court **may revoke his probation and impose any or all of the sentence**. For purposes of this section, "absconding from supervision" means the failure of a probationer to report to his supervising officer for six (6) or more consecutive months.

(Emphasis added). Thereafter, a defendant on probation or post-release supervision could only have his supervised release "fully revoked" for the commission of a new felony, for absconding supervision for six months, or for committing a third technical violation.

¶58.    This has led to some inequitable results. For example, a defendant whose non-adjudicated probation is revoked for failing to successfully complete drug court can be adjudicated and sentenced. The circuit court in that instance can order that the defendant serve his entire sentence in MDOC's custody. *See Holifield v. State*, 303 So. 3d 444, 448 (¶5) (Miss. Ct. App. 2020) (The defendant was adjudicated guilty of two drug possession crimes and sentenced to serve eight years and four years consecutively in MDOC's custody after having failed to successfully complete drug court.).

¶59.    Whereas, in *King v. State*, the defendant pled guilty to felony child abuse and felony child neglect and was sentenced to serve terms of forty years and five years consecutively. *King*, 405 So. 3d at 1266 (¶4).  The circuit court suspended these sentences and placed the defendant on probation and, as part of his probation, ordered that he successfully complete the drug court program. *Id*.[22] The circuit court ultimately found that he had failed to successfully complete the drug court program, *fully revoked* King's probation, and ordered that he begin serving his forty-five years in MDOC's custody. *Id*. at 1268 (¶11). On appeal this Court found that because King had only had two revocations for technical violations, the circuit court erred by fully revoking his sentences. *Id*. at 1272 (¶27).

---

[22] Because these were crimes of violence, King was absolutely not eligible to participate in the drug court program. *See* Miss. Code Ann. § 9-23-15 (Rev. 2019); Miss. Code Ann.§ 97-3-2 (Rev. 2020).

¶60. These cases are but two of many cases that have dealt with the difficulty of applying the recently created "technical violations" in a drug court setting. The Mississippi Intervention and Treatment Court Rules provide suggested "sanctions" that a drug court may impose on non-compliant participants. As in this case, Roberts had been "sanctioned" to serve seven days in jail for a violation in January 2019, fourteen days for a violation in September 2019, twenty-eight days for a violation in October 2019, and six weeks for a violation in April 2020, yet none of these "sanctions" counted as "technical violations."

¶61. During the 2025 legislative session, Senate Bill 2359 was enacted, which amended section 47-7-2 to read:

> (q) "Technical violation" means an act or omission by the probationer that violates a condition or conditions of probation placed on the probationer by the court or the probation officer, **but shall not include a plea or sentence in an intervention court provided under Chapter 23, 25 or 27 of Title 9, Mississippi Code of 1972.**

(Emphasis added). This appears to indicate that "sanctions" in drug court cannot be counted as "technical violations."

¶62. Drug court judges can be extremely patient with participants who are trying to overcome drug addiction. They have several "carrots and sticks" that they can use to try to encourage participants to regain their sobriety. But when these judges have exhausted their patience, and a defendant "flunks out" of the drug court program, circuit judges need to have the discretion to either fully or partially revoke the non-compliant defendant's sentence.

¶63. Using Roberts' case as an example, she was in the drug court program for over six years. Supervised probation or post-release supervision can last no longer than five years.

Miss. Code Ann. § 47-7-37(1) (Rev. 2023). If the circuit court now sends her to a technical violation center for thirty days for a first technical violation, when she gets out, what happens then? She cannot be returned to supervision. The bottom line is she will have failed to remedy her drug problem, she will have avoided serving significant jail time, and, basically she will have "thumbed her nose" at the system.

¶64. I would encourage the Legislature to revisit this issue and consider amending section 47-7-37.1 to provide circuit judges with the same discretion with defendants who fail to successfully complete drug court as circuit judges now have with defendants who commit new felonies or who abscond supervision for more than six months.

**BARNES, C.J., WEDDLE AND LASSITTER ST. PÉ, JJ., JOIN THIS OPINION. LAWRENCE AND McCARTY, JJ., JOIN THIS OPINION IN PART.**

**LAWRENCE, J., DISSENTING:**

¶65. I disagree with the majority's determination that the circuit court does not have discretion to revoke a drug court participant's continued enrollment in the program until the participant has been sent to a technical violation center three times. The question presented in this case is whether the statutory procedures set out in Mississippi Code Annotated section 47-7-37 (Rev. 2023) apply to drug court participants or only to those "probationers" (and those on post-release supervision (PRS)) supervised by the Mississippi Department of Corrections (MDOC).

¶66. Before that question is answered, it is important to note that Roberts signed the sentencing order placing her in drug court and included the following language:

If the claimed violation is proven, the Court will have authority to terminate

36

the period of post release supervision and to incarcerate the Defendant for up to the full amount of the sentence.

¶67.   Further, the sentencing order ends with this very important language:

The Offender . . . understands that he/she may be immediately incarcerated for any violations of the Drug Court requirements.

Those requirements included for Roberts to

[r]egularly report to the undersigned judge on a weekly basis or as hereinafter ordered and further, regularly report and/or be on call to the drug court supervisor personnel as directed.

Roberts also signed a "Drug Court Contract" on April 3, 2018, stating:

I agree to be supervised by the drug treatment court services provider[.] . . . I agree that the [c]ourt may generally rely on a presumptive chemical test result. . . . I may be subject to certain graduated sanctions for violation of the Drug Court rules as contained in the Drug Court Handbook[.] . . . **I understand that by entering into the Drug Court Program that I am waiving certain constitutionally guaranteed rights to which I might otherwise be entitled. . . . I likewise understand that I may be removed from the program for any serious infraction**, including but not limited to failure to report to drug court without just cause, submission of fake urine or false documentation . . . . Likewise, any conduct which evidences an abandonment of program objectives may result in expulsion from the program.

(Emphasis added). Drug court is unique under our law. Participants enters the drug court program knowing if they violate the rules of that program, they can be expelled and "immediately incarcerated." Nowhere does Roberts's agreement or sentencing order recite the graduated punishments of the technical violation center for those supervised by MDOC.

¶68.   Even if the majority is correct that section 47-7-37 applies to drug court participants, I think Roberts waived any future reliance on the procedures set forth in that statute when she agreed to enter into the drug court program. Notwithstanding her waiver, I believe the

procedures set forth in section 47-7-37 were never intended to apply to drug court participants. Section 47-7-37 technical violation centers were designed for and meant to apply to those individuals on regular probation and post-release supervision who are being monitored and supervised by MDOC, not the drug court.

¶69. The majority relies on three cases to conclude that a technical violation center or a restitution center under section 47-7-37 applies to drug court revocations: *Atwood v. State*, 183 So. 3d 843 (Miss. 2016); *King v. State*, 405 So. 3d 1263 (Miss. Ct. App. 2025); *White v. State*, 311 So. 3d 1278 (Miss. Ct. App. 2021). But *Atwood* and *White* were not even drug court cases. The third case, *King*, involved a person sentenced to drug court illegally. I wrote a dissent in *King* objecting to the legal resolution ordered by the majority because of that illegal sentence and specifically stated the case should be remanded for a legal sentencing. *King*, 405 So. 3d at 1275 (¶34) (Lawrence, J., dissenting). There is a vast difference between court-imposed sanctions for those drug court participants violating drug court rules and revocation procedures for those under MDOC's supervision.

¶70. Intervention courts—commonly called drug courts—were created by and derive their legal authority from Title 9 of the Mississippi Code. In a civil case before this Court, *Sturkin v. Mississippi Ass'n of Supervisors*, 315 So. 3d 521 (Miss. Ct. App. 2020), this Court addressed the history and legal structure of drug court, stating:

> In April 2003, legislation was passed creating Drug Courts statewide. *See* Miss. Code Ann. §§ 9-23-1 to -23 (Rev. 2018 & Supp. 2019). A Drug Court is considered a hybrid specialized or diversion court that handles drug crimes or crimes that are considered "drug driven" (to include DUI and probation violations). Its purpose is "to reduce the incidence of alcohol and drug use, alcohol and drug addiction, and crimes committed as a result of alcohol and

38

drug use and alcohol and drug addiction." Miss. Code Ann. § 9-23-3(1).

*Id.* at 526 (¶4).

¶71.    The terms "revocation" or "technical violation centers" are never mentioned in Title

9.  But the word "sanction" is.[23]  In fact, drug courts are statutorily required to report "each

month" certain information about the workings of the court.  *See* Miss. Code Ann. § 9-23-11

(Rev. 2019).  That section requires any "violations" committed by "participants" and "any

resulting sanctions" be reported on a monthly basis.  *Id.*  Nothing in Title 9 requires drug

courts to report the number of participants sent to technical violation centers.

¶72.    A key component of drug court is the requirement that in order to be certified by the

Administrative Office of Courts as an intervention court (drug court), the statute requires the

program to have "[o]ngoing **judicial interaction** with each participant."  Miss. Code Ann.

§ 9-23-11 (Rev. 2019) (emphasis added).  Indeed, the definition of "intervention court" in

section 9-23-5 states that the term "means a drug court" that "utilizes an immediate and

highly structured intervention process," which includes "intensive judicial monitoring."  The

---

[23] Mississippi Intervention and Treatment Court Rule 6.6.1 provides that "[e]ach intervention court should establish a reasonable listing of incentives and sanctions that may be utilized to meet the needs of the program and/or participant." Furthermore, Rule 6.6.1(b) offers "suggested sanctions," stating:

> book report or essay assignments, verbal warning, increased drug testing and/or meetings, return to the previous phase or start current phase again, community service hours, short stays in detention of less than seventy-two (72) hours may be appropriate at times without a revocation hearing. If over seventy-two (72) hours, a petition to revoke shall be filed. Additionally, responses to violations and/or negative behavior can include a service/treatment adjustment as well as a sanction.

Miss. Intervention & Treatment Ct. R. 6.6.1(b).

drug court program is built around this vital requirement that is not mandated for those in

MDOC's probation or post-release supervision programs. In fact, this difference is

statutorily mandated just as the data collection is. This fundamental difference is exactly why

drug court works.[24]

¶73. Drug court works because judges and drug court personnel inspire and guide

participants. Drug court works because judges have **discretion** in fashioning appropriate and

swift sanctions when a violation of the rules of the program occurs. The proverbial hammer

looming over the head of each participant is the fear and motivation to avoid being sent to

prison for the remainder of their original sentence. But now, based on this Court's reliance

on precedent established in *King*, judges must send a participant to a technical violation

centers three different times for varying periods for violations of drug court rules before the

program can mimic what it is doing now.[25]

¶74. Technical violation centers—wherever they actually are in this state—are not designed

to handle those recovering from drug addiction. They do not afford the same guidance and

behavior-modifying requirements that drug court does. The participant would essentially be

---

[24] In a recent report distributed by the Intervention and Treatment Courts, data indicated that drug court is successful in this state—notably, only 4.3% of drug court participants were re-incarcerated after the program, whereas 39.1% of MDOC probation and post-release program participants were re-incarcerated. *See* Savings to the State, Adult Felony Drug Intervention Courts FY06-24 (Sept. 8, 2025) (citing MDOC Recidivism Report FY 2021).

[25] *King* should never have been precedent for the majority's opinion because King was not eligible for drug court and, thus, was **illegally sentenced** to drug court. Rather than finding that normal revocation procedures applied to drug court participants, this Court should have remanded King's case for re-sentencing. Instead, this Court opted to interpret a new meaning into old law, which will drastically change the drug court program.

relegated to sitting in an environment that is not conducive to conquering their drug addiction. Every time a participant was punished by being sent to a technical violation center, they would essentially be starting over when they returned to drug court following their release.

¶75. I think subtle and plain meaning word usage within our law supports the conclusion that drug courts were not intended to be governed by the law controlling revocations for those supervised by MDOC in the department's probation and post-release supervision programs. First, the Mississippi Legislature recently updated the statutory definition of "technical violation" during its 2025 session. The statute was amended to provide:

> "Technical violation" means an act or omission by the probationer that violates a condition or conditions of probation placed on the probationer by the court or the probation officer, **but shall not include a plea or sentence in an intervention court provided under Chapter 23, 25 or 27 of Title 9, Mississippi Code of 1972.**

Miss. Code Ann. § 47-7-2(q) (Supp. 2025) (emphasis added). The plain language of the definition of technical violation excludes those sentenced to drug court. This new definition was not enacted when Roberts was expelled from the program. It certainly can be used to define the Legislature's intention of punishments for those in drug court as opposed to those on probation or in the PRS program supervised by MDOC. To hold otherwise serves only to confuse the nature of drug court program with the probation and post-release programs run by MDOC.

¶76. Second, it is important to note that section 47-7-35 authorizes the terms and conditions a trial court can impose on those who are ordered to complete a term of probation and post-

41

release supervision under MDOC. Those approved terms **do not include drug court completion**. That is because the MDOC does not supervise drug court programs; our courts do. The failure to include completion of drug court as a term and condition of probation for the programs run by MDOC leads to the conclusion the drug court programs are **deliberately different—and for good reason**. Drug court success relies on the interaction between the court and the participant. When the rules are not followed, sanctions are imposed according to the violation and the needs of the individual participant. The program would not work with a cookie-cutter approach to sanctions such as those required in section 47-3-37 for those on MDOC-supervised programs.

¶77.    Third, section 47-7-2 provides the definitions for certain terms or words used in that chapter. Those definitions clearly point out that "correctional system" means the "facilities, institutions, [and] programs" of the "department" for "adult offenders" who are "committed to the custody of the department." Miss. Code Ann. § 47-7-2(e). "Department" is defined as the "Mississippi Department of Corrections." Miss. Code Ann. § 47-7-2(g). As stated previously, the term "technical violation" now excludes intervention courts. Miss. Code Ann. § 47-7-2(q). Those definitions offer support for the notion that the words used in title 47 refer to probation and post-release programs supervised by the MDOC, **not drug court**. Drug courts or intervention courts are not mentioned in the definitions portion of the statute.[26]

---

[26] It is important to note that this distinction is further set out in the Mississippi Intervention and Treatment Court Rules from 2024. These rules define the term "Active Participant" as "a participant who is **under court supervision**, and attending, participating, and **receiving services from the intervention court**." (Emphasis added).

¶78. Fourth, section 47-7-33 authorizes an individual guilty of a crime to be placed on probation and clearly sets forth that the probation shall be administered by MDOC. "Notice shall be delivered to the central office of the Mississippi Department of Corrections and to the regional office of the department **which will be providing supervision to the offender on probation**." Miss. Code Ann. § 47-7-33 (Rev. 2023) (emphasis added). More clearly, 47-7-3(1) states "**in placing any defendant on probation, the court, or judge, shall direct that such defendant be under the supervision of the Department of Corrections**." (Emphasis added). Drug court is not mentioned. The statute creating probation requires it be supervised by MDOC.[27]

¶79. Fifth, likewise, section 47-7-34 permits an offender released from incarceration to be placed into a post-release supervision program. The language clearly provides that "[p]ost-release supervision programs shall be operated through the probation and parole unit of the Division of Community Corrections of the department." Miss. Code Ann. § 47-7-34 (Rev. 2023). Again, drug court is not mentioned.

¶80. Finally, section 47-7-37—the provision that the majority now determines guides the

---

[27] The sentencing order in this case conclusively proves Roberts was to be supervised by the court, not MDOC. The majority relies on **one** senator's comment that the goal of the amendment was to place more offenders in drug court. The majority's interpretation would create different applications for different individuals in the criminal justice system. For those on PRS and probation monitored by MDOC, a new offense would exclude technical violation centers if the offender is sentenced to drug court. But those individuals supervised by the court already in drug court would have to go to technical violation centers. If the majority is correct concerning the intended effect of the amendment, that would do the opposite of putting more people in drug court. But a plain reading of the unambiguous statute yields the conclusion that a violation by anyone sentenced to an intervention court (drug court) would be excluded from the definition of a technical violation.

43

sanctioning and revocation process in drug court—clearly pertains to situations for "an alleged violation of **probation as herein provided**[.]"  Miss. Code Ann. § 47-7-37 (Rev. 2023) (emphasis added).  The statute then sets forth each section's application to different legal scenarios (e.g., when an arrest warrant is issued versus when an arrest warrant is not issued) that a "probationer" may face with each unique situation. *See* Miss. Code Ann. § 47-7-37(5)(a)-(d).  Each section sets forth the same punishment scheme: three different graduated periods of time spent in a technical violation center before a court can sentence the "probationer" to the remainder of the sentence.  The language, "probation as herein provided" clearly means probation that is supervised by MDOC, not drug court.  *See* Miss. Code Ann. § 47-7-33(1); *id*. § 47-7-34.  Since drug courts are not supervised by MDOC, the revocation procedures defined for those violating the terms of MDOC supervised probation do not apply to those violating drug court rules.  Rather, drug courts are governed by Title 9, the contract between the participants and the court, as well as the Mississippi Intervention and Treatment Court Rules.[28]  Title 9's use of the word "sanction" and not "revocation" or "technical violation centers" clearly differentiates between revocations procedures under MDOC's probation programs and a court sanctioning a drug court participant to enforce drug free behavior.

¶81.   The majority alleges this dissent "overlooked" Roberts's sentencing order that

---

[28] Title 9 and the Mississippi Intervention and Treatment Court Rules clearly provids that the circuit courts supervise drug courts, which means drug court participants are not "probationers" referred to in Title 47. Drug court participants do not commit "alleged violation[s] of probation as herein provided" because they are not on probation under title 47. *See* Miss. Code Ann. § 47-7-37(3).

44

"imposed a fifteen-year sentence of PRS, and not simply an independent drug court placement." The majority cites the language of the sentencing order that Roberts was placed on "non-reporting Post Release Supervision due to the fact that said Defendant will be reporting to Drug Court." The majority insists this language means the graduated penalty framework for offenders in MDOC's PRS program or probation applies to drug court. However, that language only further bolsters my point. PRS was created by statute. There was no common-law-formed provision for PRS. It was created into existence by section 47-7-34. That statute authorized a court to place an offender on PRS after serving time in MDOC's custody. The court's reference to section 47-7-34 simply referred to the legal authority given by statute allowing a court to sentence someone to PRS after serving jail time. The referral to the PRS authority statute in the sentencing order should not be misconstrued to indicate that drug court participants supervised by the court should be subjected to the statute for the technical violation center with the graduated penalties for those who are supervised by MDOC.

¶82. Contrary to the majority's assertion that this dissent takes "a final approach that would . . . deprive Roberts of her right to expect graduated penalties under [s]ection 47-7-37"; it is not the dissent, but **Roberts herself** who deprived **herself** of that right. She signed the agreement "waiving certain constitutionally guaranteed rights[.]" Indeed, she specifically agreed:

> I may be subject to certain graduated sanctions for violation of the Drug Court rules as contained in the Drug Court Handbook[.] . . . I understand that by entering into the Drug Court Program that **I am waiving certain constitutionally guaranteed rights to which I might otherwise be entitled**.

. . . I likewise understand that **I may be removed from the program** for any serious infraction[.]

(Emphasis added). Because the majority opinion writes intervention or drug courts into the statute meant to define procedures for revoking those on MDOC probation or post-release supervision, I respectfully dissent.[29]

**EMFINGER AND WEDDLE, JJ., JOIN THIS OPINION IN PART.**

---

[29] We are supposed to look to the plain language of the statute when interpreting a statute. *See Hall v. State*, 241 So. 3d 629, 631 (¶5) (Miss. 2018) ("If the words of a statute are clear and unambiguous, the Court applies the plain meaning of the statute and refrains from using principles of statutory construction." (quoting *Lawson v. Honeywell Int'l Inc.*, 75 So. 3d 1024, 1027 (¶7) (Miss. 2011))). "This Court cannot add to the plain meaning of the statute or presume that the legislature failed to state something other than what was plainly stated." *Stokes v. Jackson Sales & Storage Co.*, 374 So. 3d 1197, 1200 (¶17) (Miss. 2023) (quoting *Bd. of Supervisors of Jackson Cnty. v. Qualite Sports Lighting LLC*, 337 So. 3d 1040, 1043 (Miss. 2022)). In this case, I believe the majority writes intervention courts (drug courts) into a statute meant to provide revocation procedures for those participating in MDOC-supervised programs, not those supervised by drug courts. The courts should not amend statutes, the Legislature should.